UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MARECELLUS ADAMS #425582            CIVIL ACTION NO. 18-cv-634 SEC P

VERSUS                              JUDGE FOOTE

DARREL VANNOY                       MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

A Caddo Parish jury returned a unanimous verdict that Marecellus Adams ("Petitioner") was guilty of the second-degree murder of Michael Blackshire, and a mandatory life sentence was imposed. Petitioner's conviction and sentence were affirmed on direct appeal. State v. Adams, 139 So.3d 1106 (La. App. 2d Cir. 2014), writ denied, 159 S.3d 460 (La. 2015). His post-conviction application was denied.

Petitioner now seeks federal habeas corpus relief on the grounds of insufficient evidence, excessive sentence, ineffective assistance of counsel, and discriminatory peremptory challenges. He has also filed a motion to amend and supplement his petition to present a McCoy claim that counsel conceded his guilt over his express objection. For the reasons that follow, it is recommended that the petition and motion for leave to amend be denied.

**Sufficiency of the Evidence**

**A. Relevant Facts**

The evidence showed that Petitioner and the victim, Michael Blackshire, were among a group of people who often gathered in an open lot behind a house on Miles Street in Shreveport. People would hang out there to drink, play dominoes, barbecue, and the like. The victim placed a 911 call at 9:03 p.m. on July 7, 2012. The 911 records show that Michael Blackshire called and reported that he was being threatened by a black male, named Marecellus, who was wearing a white t-shirt and blue pants. A recording of the call was played for the jury. Patrick Crutchfield, the victim's nephew, identified his uncle in a photograph and testified that the voice on the 911 call was that of his uncle. Tr. 529-30. The record also shows that the first police unit arrived at 9:17 p.m. Tr. 357-63.

Police found Mr. Blackshire unconscious, having been hit numerous times with a blunt instrument, likely a long 2x4 board. His skull was caved in, several teeth were knocked out, and he was gasping for breath. Blackshire was taken to the LSU Medical Center, and he died the next day. Witnesses told police that Petitioner was responsible for the attack, and he had left the scene.

Dr. James Traylor, the forensic pathologist who performed the autopsy, testified that the cause of death was hemorrhagic shock and blunt force injuries, meaning that Blackshire was beaten to death. Dr. Traylor identified a total of eighteen blows, with five to the head. Twelve of the victim's teeth had been traumatically knocked out of socket. One of the blows to the body caused tears to the liver. There were no injuries to the victim's hands or knuckles that would reflect he had hit or punched someone. Tr. 394-412.

Corporal Brian Lauzon was alerted to the location of Petitioner on the day after the incident.  Petitioner, who wore blue jeans and a white t-shirt, was shaking and told the officer that he knew police were looking for him.  Officer Lauzon read Petitioner his <u>Miranda</u> rights, which Petitioner said he understood.  Petitioner said he believed police were looking for him because of an altercation the night before, where he sent a man to the hospital.  Officer Lauzon asked Petitioner what happened, and Petitioner "said he basically got the best of the guy."  He first said that the man came toward him with a knife, so he picked up a board and struck him in the head with it.  Petitioner then revised the story to say the victim went toward Petitioner's wife, which caused Petitioner to pick up the board and use it to strike the victim. Then Petitioner said the victim both had a knife and was going toward his wife, which caused Petitioner to use the board.  Tr. 495-99.  A DNA analyst with the crime lab testified that she tested the blue jeans and white t-shirt taken from Petitioner when he was arrested; she found Petitioner's own blood on his pants but no blood on his shirt.   Tr. 430-35.

Detective Shonda Holmes interviewed Petitioner, and a recording of the interview was played for the jury.  Tr. 504-16.  The record filed with this court does not include the recording, and the court reporter did not transcribe it.   But the state appellate court apparently had the benefit of the recording and summarized the interview as Petitioner stating that Blackshire was arguing with Petitioner's wife, Petitioner tried to defend his wife, Blackshire came toward him with a knife or boxcutter, and Petitioner grabbed a 2x4 and struck Blackshire once on his head and once on the side of his face.  Petitioner said that Blackshire was not on his cell phone when he struck him.

The other people present at the time of the crime were Sarah Davis, Robert Rattler, and Donald Ashley. Leroy Scott, the owner of the lot, lived in a nearby residence, and he testified that Petitioner and the victim often visited the area and frequently bickered about a woman. Scott said that the two men were talking loudly and trading insults that evening. Blackshire wanted to call 911, but Scott steered him away from Petitioner and told him to stay on Scott's porch and let things cool down. Scott went inside and was watching television when he heard a scream. He ran outside to find Blackshire on the ground. Tr. 364-74.

Sarah Davis, age 45, testified that she often visited the lot to lounge around. On the evening of the incident, she had drunk a half-pint of whiskey, which was less than her usual amount. She was the only woman present that evening. She said she did not hear anything or see how it started, but when she returned from a trip to the water cooler, she saw Petitioner and the victim on the ground. She said that before then it was loud, as always, but there was nothing that caught her attention. She saw Petitioner "hitting him a couple of times more, and he didn't move or nothing." She said the weapon was a "long stick," and "as tall as he is, he was hitting pretty hard." Tr. 450-62.

Robert Rattler testified that he used to hang around the lot, drink a few beers, and play dominoes. He had drunk only two beers at the time of the incident. Rattler testified that he saw Petitioner and the victim talking nearby. Blackshire then started walking in Rattler's direction, while talking on a cell phone. Rattler heard a woman on the phone say 911, "and that's when he got hit." Rattler said that Petitioner hit Blackshire "in the back of the head," and the victim fell to the ground. The victim did not have a visible weapon.

Rattler said that Petitioner hit the victim twice with a "long big old white thing." Rattler told Petitioner to stop before he killed the victim, and Petitioner took off. Tr. 462-77.

### B. State Court Decision

Petitioner challenged the sufficiency of the evidence on direct appeal and presented the same arguments he presents in support of his federal petition. In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

The state appellate court noted that second-degree murder includes the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. The court noted that the evidence did not show that Petitioner was in danger from the victim, nor was he protecting his wife, who was not present and did not arrive until after the incident. The witnesses on the scene testified that Sarah Davis was the only female present.

The court acknowledged that Ms. Davis said she saw Petitioner strike the victim "two more times" and Robert Rattler said there were only two blows, with one to the back of the head. The medical evidence, however, indicated many more blows were struck, but none to the back of the head. Rattler also said that he never heard the victim say anything

to the 911 dispatcher, which was inconsistent with the recording of a lengthy conversation with the 911 operator.

The appellate court acknowledged these inconsistencies, but it noted that the testimony of the witnesses at the scene was generally consistent that Petitioner was the aggressor and violently attacked the victim. Dr. Traylor's testimony showed that the number and severity of the blows were greater than described by the witnesses but consistent with the use of an object such as they described. The appellate court applied the Jackson standard and determined that the jury found that Petitioner was the aggressor with specific intent to kill or cause great bodily harm to the victim, and a rational trier of fact could have found those facts from the evidence presented. State v. Adams, 139 So.3d at 1110-12.

### C. Habeas Review

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

Petitioner admitted in his statements to police that he attacked the victim with a board. He gave inconsistent statements about an alleged justification, but none of the testimony offered by the other witnesses supported his claim that the victim was an aggressor. The victim's 911 call also undermined that argument. There were some inconsistencies in the description of events offered by the witnesses, and between their descriptions and what was reflected in the autopsy report. But "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011). And "under Jackson, the assessment of the credibility of the witnesses is generally beyond the scope of review." Schlup v. Delo, 115 S.Ct. 851, 868 (1995). The state court's decision with respect to the sufficiency of the evidence was an entirely reasonable application of Jackson to the relevant facts, so there is no basis for habeas relief with respect to this claim.

**Excessive Sentence**

Louisiana law mandated a natural life sentence for the conviction of second-degree murder. The trial judge noted the mandatory nature of the sentence and imposed it without assigning reasons. Tr. 610. Petitioner argued on direct appeal that the trial court erred when it did not grant a downward departure (none was requested) and did not discuss relevant sentencing factors under La.C.Cr.P. Art. 894.1. Petitioner's argument was based primarily on state law, but he cited a state court decision that applied federal jurisprudence regarding sentencing, so the State concedes that Petitioner has exhausted his state court remedies with respect to a federal sentencing claim.

The state appellate court noted that there is no need for a trial court to justify a sentence under Article 894.1 if the court is legally required to impose the sentence. The court also rejected the claim that the sentencing judge should have departed from the statutorily mandated sentence, because Petitioner did not demonstrate that he is the exceptional defendant for which downward departure is required. The court noted that Petitioner mercilessly bludgeoned Mr. Blackshire to death by striking him 18 times with a 2x4 and continued to attack him as he lay motionless and unconscious on the ground. The beating broke numerous bones in the victim's face, knocked out 12 of his teeth, tore his liver, and left him unrecognizable. Petitioner did not turn himself in and did not show any remorse for his actions. State v. Adams, 139 So.3d at 1112-13.

Petitioner continues to argue in his habeas petition that the sentencing judge did not discuss relevant factors under Article 894.1. As the state court noted, compliance with the Article is not required when the sentence is mandatory. Furthermore, habeas challenges based on failure to comply with this state sentencing rule have been rejected. Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987); Butler v. Cain, 327 Fed. Appx. 455 (5th Cir. 2009). Habeas relief must be based on violations of federal law.

Petitioner also argues that his sentence was disproportionate in violation of the Eighth Amendment. In Solem v. Helm, 103 S.Ct. 3001 (1983), the Court struck down a sentence of life without parole for a man who was convicted of writing a "no account" check for $100 and who had three prior convictions for non-violent offenses. The majority found the sentence was significantly disproportionate to the crime. "In other cases,

however, it has been difficult for the challenger to establish a lack of proportionality." Graham v. Florida, 130 S.Ct. 2011 (2010).

In Harmelin v. Michigan, 111 S.Ct. 2680 (1991) the offender was sentenced to life without parole for possessing a large quantity of cocaine. A closely divided Court upheld the sentence. Another closely divided Court rejected a challenge to a sentence of 25 years to life for the theft of a few golf clubs under California's three-strikes statute. Ewing v. California, 123 S.Ct. 1179 (2003).

The Court in Lockyer v. Andrade, 123 S.Ct. 1166 (2003) reviewed its decisions and rejected a habeas attack on two consecutive terms of 25 years to life for a third-strike conviction. The petitioner had a string of burglary, drug, and property-crime convictions, capped by felony petty-theft after he stole approximately $150 worth of videotapes. The sentence did not permit habeas relief because it was not contrary to or an unreasonable application of clearly established gross disproportionality principle set forth in Supreme Court holdings. The Court admitted that its precedents in the area are not clear, which makes it difficult to obtain habeas relief under the deferential Section 2254(d) standard.

Petitioner does not point to any Supreme Court decision that has held that a mandatory life sentence for an adult convicted of intentional murder is grossly disproportionate to the crime. The killing in this case was particularly heinous, and there is simply no federal law that suggests habeas relief from the sentence is available in these circumstances. The state court's rejection of this claim was not an unreasonable application of any clearly established Supreme Court precedent, so habeas relief is not available.

**Post-Conviction Decisions in State Court**

Petitioner next asserts claims for ineffective assistance of counsel and improper use of peremptory challenges. These claims were first presented in the post-conviction process. Petitioner presented several ineffective assistance of counsel claims, some of which are also asserted here, in his post-conviction application. The district court reviewed the claims and summarily denied them based on a finding that Petitioner failed to show any performance by counsel that was objectively below a professional standard of practice, and Petitioner failed to provide specific facts to show how any such performance could have possibly prejudiced his case. Tr. 809-813.[1]

With respect to the claim of racially discriminatory jury selection, the district court found that it was without merit because it was based on a general accusation unsupported by facts. Tr. 812. The appellate court denied writs in a brief opinion that cited _Strickland_ and the Louisiana rules regarding the burden of proof on a post-conviction application. It held, "On the showing made, this writ is hereby denied." Tr. 909. The Supreme Court of Louisiana also denied a writ application, with an observation that Petitioner "fails to show he received ineffective assistance of counsel under the standard of _Strickland_" and failed to satisfy his post-conviction burden of proof as to his remaining claims. Tr. 984-85.

---

[1] The ruling also appears as an exhibit to the petition, Doc. 1-5, which is noted because one page of the ruling is missing from the state court record.

**Ineffective Assistance of Counsel**

### A. Introduction

Petitioner argues that his attorney rendered ineffective assistance of counsel ("IAC") in several ways.  To prevail on such a claim, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different.  Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

### B. Habeas Burden

Petitioner's IAC claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007).  The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it.  The federal court's review is thus "doubly deferential."  Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).  For the federal court to grant relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quotation marks removed).

"If this standard is difficult to meet, that is because it was meant to be."  Harrington v. Richter, 131 S.Ct. 770, 786 (2011).  Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches

only "extreme malfunctions" in the state criminal justice system.  Id.  Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  Id.

### C. Exhaustion; Procedural Bar

The State argues that Petitioner did not exhaust his state court remedies with respect to the particular Strickland claims he asserts in his federal petition because, although he presented some Strickland claims in his post-conviction application,  he did not articulate these particular claims before the state trial court.  Petitioner did present them in his writ applications to the state appellate court and Supreme Court of Louisiana.  The State argues that the claims are unexhausted and now procedurally defaulted.

Petitioner was not represented by counsel on his post-conviction application, so his error might be forgiven under Martinez v. Ryan, 132 S.Ct. 1309 (2012).  The court need not decide the procedural bar issue if it instead chooses to deny the claim on the merits. King v. Davis, 883 F.3d 577, 585 (5th Cir. 2018) (electing to ignore the procedural bar and cut to the "core of the case," the merits of the underlying claims); Glover v. Hargett, 56 F.3d 682, 684 n.1 (5th Cir. 1995).  That is the course that will be followed here, and the court will apply the deference due under Section 2254(d) because the claims did receive state court decisions on the merits in the state appellate and supreme court.

### D. Failure to Prepare

Petitioner argues that his attorney failed to adequately investigate the facts and circumstances of the case, including that Petitioner and Blackshire had participated in fights before.  Petitioner argues that counsel could have used that information to present to the jury that Petitioner did not have any specific intent to cause serious harm or death to

the victim.  Leroy Scott testified that he sometimes had to break up a scuffle between the people who hung out in his yard, and he said that Petitioner had been messing with Blackshire, "arguing, like they usually do."  He also said that Petitioner was "messing with him again, arguing with him, wanting to fight."  On cross examination by defense counsel, Scott said that he "just thought they were doing boxing and hit him like he usually do, fighting."  Tr. 365-66, 373, & 384.

Thus, the jury heard testimony that there had been prior fights and disagreements between the two men, but they obviously were not persuaded that the history somehow meant that Petitioner lacked specific intent to inflict great bodily harm when he repeatedly bludgeoned the victim with a 2x4.  There is no reasonable likelihood that the verdict would have been different had defense counsel put more effort into establishing a history of fighting between the men.  Accordingly, the state court's rejection of this Strickland claim was not objectively unreasonable.

Petitioner also makes a one-sentence argument that defense counsel said he would present an intoxication defense but failed to do so.  Counsel did file notice of intent to offer an intoxication defense.  Tr. 74.  He argued in closing that Petitioner's intoxication was part of a "toxic stew" that would allow the jury to find that he lacked specific intent and was guilty of no more than manslaughter.  Tr. 568-69.  But counsel was hampered in presenting an intoxication defense because, after consultation with counsel, Petitioner elected not to testify.

There was evidence that people in the lot often drank, but Mr. Scott said that he did not get close enough to Petitioner that day to tell whether he had been drinking.  Defense

counsel did get Scott to say that there were two pints of Thunderbird under a tree.  Tr. 384-85.  Petitioner has not articulated any other evidence of intoxication that counsel could have discovered and presented at trial if he had engaged in additional preparation.  Given this lack of factual support, the state court's denial of this claim was not an unreasonable application of Strickland.

### E. Failure to Cross-Examine Witnesses

Petitioner argues that defense counsel "failed to cross-examine certain witnesses and also failed to properly cross-examine other witnesses."  He does not identify the witnesses, suggest what questions should have been asked, state what answers could have been generated to help the defense, or articulate any facts in support of this argument.

"[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."  Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000).  When a petitioner does not provide the facts necessary to support a claim, the "mere allegation of inadequate performance during cross-examination is thus conclusory and does not permit the Court to examine whether counsel's failure prejudiced her."  Day v. Quarterman, 566 F.3d 527, 540 (5th Cir. 2009).  Accordingly, this claim lacks merit.

### F. Denial of Right to Testify

Petitioner argues that counsel constructively denied him the right to testify by failing to prepare him for trial.  Petitioner says the lack of preparation is why he told the trial judge that he did not wish to testify.  The record does not support this claim.

After the State rested its case, defense counsel requested a bench conference. The judge then announced that it was about 7:15 p.m., and court would recess for the evening. Counsel asked that Petitioner be held at the courthouse before he returned to the jail because counsel wanted to see him that evening. The court granted the request and added that counsel could have some additional time in the morning if needed. Tr. 531-32.

The next morning, defense counsel told the court that he spoke with Petitioner the night before, and again in the morning, about the prospect of testifying. "He did not want to last night, and he does not want to this morning." The court asked Petitioner if those statements were correct, and he answered, "Yes, ma'am." Petitioner was asked if that was what he wished, and he repeated, "Yes, ma'am." Tr. 540. Petitioner did not make any complaint that he wished to testify but felt unprepared, not did he voice any other objections.

The state courts denied this claim summarily, and the lack of supporting evidence demonstrates that the decision was not an objectively unreasonable application of Strickland. Petitioner has not explained what additional preparation might have persuaded him to testify, nor has he hinted at what testimony he might have offered that might have produced a different verdict. Given the complete lack of supporting evidence, this claim is meritless. And it is too late for Petitioner to present such facts to this court. Review of a Strickland claim under Section 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).

**Discriminatory Peremptory Challenges**

Petitioner argues that his trial was fundamentally unfair because the voir dire process was not transcribed for appeal, leaving him unable to make a challenge pursuant to Batson v. Kentucky, 106 S.Ct. 1712 (1986) that the prosecution excluded black persons from the jury.

The court minutes show that the State used five peremptory challenges, and the defense used seven. No additional detail is given. Tr. 3. On direct appeal, Petitioner did not raise a Batson challenge or make any other argument regarding the jury selection process. Thus, in accordance with standard procedure, the voir dire was not transcribed. Petitioner first raised his Batson challenge in the post-conviction process. He did not base it on any particular facts from his case, but rather from the "Blackstrikes" report issued by a public interest group regarding the use of peremptory challenges in Caddo Parish. The study addressed trials conducted between 2003 and 2012 (Tr. 799); Petitioner's trial began in August 2013. There is no indication that Petitioner made a Batson challenge at trial, and Petitioner has yet to articulate any specific facts that might support such an argument.

Petitioner argued in his post-conviction proceedings that he had provided enough information to warrant receiving a free copy of the voir dire transcript. Tr. 795. He complains on federal habeas that the state courts did not grant that request, but the federal habeas court does not sit to correct procedural errors alleged to have happened in the postconviction process. "[I]nfirmities in State habeas proceedings do not constitute grounds for relief in federal court." Rudd v. Johnson, 256 F.3d 317, 319 (5th Cir. 2001). As for the Batson claim itself, Petitioner has presented no supporting facts or evidence

about his case, to the state or federal court, so the state court's rejection of this claim was not an objectively unreasonable application of <u>Batson</u>.

**<u>McCoy</u> Claim; Motion to Amend**

Four months after briefing was completed, Petitioner filed a Motion to Stay (Doc. 16) and asked this court to stay this proceeding to allow him to exhaust his state court remedies with respect to a second post-conviction application based on <u>McCoy v. Louisiana</u>, 138 S.Ct. 1500 (2018), which held that trial counsel cannot concede guilt over a client's express objection. Petitioner asked that this court stay the federal proceeding to allow him time to exhaust remedies in state court, after which he would seek to amend his federal petition and add the exhausted <u>McCoy</u> claim.

Petitioner's motion for stay did not offer any facts to support his asserted <u>McCoy</u> claim. A review of the record showed that defense counsel waived an opening statement. In closing argument, defense counsel argued that it was a case of manslaughter rather than second-degree murder. He argued in favor of an intoxication defense and challenged the state's ability to prove specific intent to kill or inflict great bodily harm. He did concede that the defense could not establish self-defense as Petitioner had claimed in his statements to police. Petitioner did not point to any record evidence that reflects that he objected to this defense strategy.

The undersigned denied the motion to stay, noting the lack of factual foundation for a claim or explanation of how Petitioner would overcome the procedural hurdles of the two-year limitations period in Louisiana Code of Criminal Procedure art. 930.8. Doc. 17. Judge Foote affirmed the decision. Doc. 20. Petitioner pursued an appeal of that decision.

While the appeal was pending, in November 2020, the Supreme Court of Louisiana denied Petitioner's writ application on the post-conviction application that presented the <u>McCoy</u> claim.  The summary denial stated that Petitioner "has previously exhausted his right to state collateral review and fails to show that any exception permits his successive filing." <u>State v. Adams</u>, 303 So.3d 1048 (2020).[2]  Then, in April 2021, the Fifth Circuit denied a COA to appeal this court's denial of Petitioner's motion to stay to allow exhaustion of the <u>McCoy</u> claim.  The Fifth Circuit noted that claims procedurally barred in state court are "plainly meritless" claims that do not warrant a stay, and Petitioner's <u>McCoy</u> claim was procedurally barred under state law.  Doc. 28.

While the federal appeal was pending, Petitioner filed with this court a Motion to Amend and Supplement Petition (Doc. 26) in which he represented that he had recently exhausted his <u>McCoy</u> claim, citing the Supreme Court of Louisiana's writ denial, and should be allowed to amend his habeas petition to assert it.  Petitioner may have exhausted his state court remedies, but it remains that the claim is procedurally barred based on the state court's denial of it on the grounds that it was a successive filing that did not meet any exception to the Louisiana law's bar against such filings.

---

[2] The Supreme Court had warned Petitioner against successive claims when it denied his first post-conviction application:  "Louisiana post-conviction procedure envisions the filing of a second or successive application only under the narrow circumstances provided in La.C.Cr.P. art. 930.4 and within the limitations period as set out in La.C.Cr.P. art. 930.8. Notably, the Legislature in 2013 La. Acts 251 amended that article to make the procedural bars against successive filings mandatory. Relator's claims have now been fully litigated in accord with La.C.Cr.P. art. 930.6, and this denial is final. Hereafter, unless he can show that one of the narrow exceptions authorizing the filing of a successive application applies, relator has exhausted his right to state collateral review."  Tr. 985.

The state court relied upon a firmly established procedural bar against successive applications to decline review of the McCoy claim. A procedural default may be excused only upon a showing of "cause" and "prejudice" or that application of the doctrine will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 111 S.Ct. at 2564 (1986). The "cause" standard requires the petitioner to show that some objective factor external to the defense impeded his efforts to raise the claim in state court. Murray v. Carrier, 106 S.Ct. 2639 (1986). As for prejudice, it "can hardly be thought to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at trial." Id. at 2648. Finally, the fundamental miscarriage of justice exception applies only when a petitioner shows, as a factual matter, that he is actually innocent: that he did not commit the crime of conviction. Ward v. Cain, 53 F.3d 106, 108 (5th Cir. 1995). Petitioner has not articulated any cause or prejudice that would overcome the procedural bar.

The claim also lacks merit. McCoy is based on a concession of guilt against the will of the defendant. The best that Petitioner can do is point to a portion of the closing argument where trial counsel stated that this was not a case of self-defense and that Petitioner "lied when he said he acted in self-defense in those two statements." Counsel may have said that, but he did not concede guilt. His next statement was that this fact did not make him guilty of murder, and the jury should look at the evidence carefully to determine whether that was the case. Counsel went on to present an argument that manslaughter, based on heat of passion, was a more appropriate verdict. Tr. 557.

Defense counsel submitted an affidavit in the state court proceedings. Doc. 26-2, Ex. F. He explained that Petitioner claimed from the beginning that he acted in self-

defense, but counsel presented him with the information learned in discovery and through interviews with witnesses conducted by a defense investigator. Counsel believed that arguing self-defense would be detrimental and, through face-to-face meetings and by letter, he provided Petitioner with the evidence and information that supported that view. Petitioner at one time authorized counsel to offer a manslaughter plea with an agreed seven to ten-year sentence range, but the prosecutor refused to consider anything short of a maximum 40-year sentence, which Petitioner rejected. Counsel testified that, during a meeting at the jail in August 2013, Petitioner asked him about trial strategy. Counsel stated that his objective was to get a manslaughter verdict, and Petitioner did not object to that course of action. He also did not object to the manslaughter argument at trial. Counsel attached his handwritten notes from the jail visit, and they indicate that he told Petitioner that the objective was to get a manslaughter verdict.

Petitioner has not pointed to any evidence in the record that indicates he voiced any objection to pursuing the manslaughter strategy or dropping the self-defense argument. Thus, in addition to being procedurally barred, the McCoy claim lacks merit. Petitioner's request to amend his habeas petition to present a McCoy claim should be denied.

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus be denied. It is further recommended that Petitioner's Motion to Amend and Supplement Petition (Doc. 26) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 27th day of May, 2021.

Mark L. Hornsby
U.S. Magistrate Judge